## The People ex rel. Board of Supervisors of Cass County v. The Townships of Porter and Calvin.

*County bond: Liability of townships.* The County of Cass, for the purpose of aiding enlistments under the President's Proclamation, adopted resolutions providing for the issuing of bonds, and that each town might, if it saw fit receive a number of them equal to its quota of men, and make its own distribu-

tion; and that if any town failed in raising its quota, it should retain the bonds and apply them on its proportion of county taxes when redeemable.

In accordance with said resolution, the various towns received said bonds according to their quota. Subsequently, the Legislature legalized the action of the several local bodies, and provided that whenever county bonds had been loaned to any township the amount of such bonds should be assessed upon such town receiving the same, &c.

*Held*, that said bonds must be considered not as created for county purposes, but as lent to the various townships so receiving them, and they were severally bound to raise the money to pay them in full by assessment, without reference to the proportion which the assessable property in the town bears to that of the whole county; and that though the county was responsible to the holders, yet, as between the county and town, the latter were the principal debtors, and the former only surety.

*Held further*, that any money paid by the county for principal or interest, being money lawfully paid for the use of the towns, entitled the county to interest thereon from the date of its payment.

*Heard April 10th.    Decided April 13th.*

Mandamus to the supervisors of the townships of Porter and Calvin, in Cass County, to levy a tax for certain county bonds received by them.

In December, 1863, the supervisors of Cass County passed the following resolutions:

"Whereas, By the late proclamation of the President of the United States, a call has been made for 300,000 men for the military service of the United States, to be furnished by volunteering, and in case any deficiency shall exist in the quota assigned to any State, then such deficiency shall be made up by draft, to commence on the 5th day of January, A. D. 1864; and, *whereas*, it becomes a loyal people to cheerfully respond to such call of the President; and, *whereas*, the offering of county and local bounties, in addition to such bounties as are already offered by the Government, may tend to fill up the quotas of the several districts and States, and thereby sustain and uphold the Government; now, therefore, be it resolved by the Board of Supervisors of Cass County, in special session assembled, that for the purpose of carrying out the object above mentioned, it is expedient to offer a county bounty of one hundred and fifty dollars, and such bounty is hereby offered, to be paid to each volunteer who shall so enlist into the military service of the United States, under said call of the President of the United States, and who shall be accredited upon the quota of any sub-district in said County of Cass, and to each man who shall be drafted to fill said quota, and who shall actually go into said service, either by himself or his accepted substitute, and that said bounty of one hundred and fifty dollars shall be paid in the manner and form hereinafter set forth:

2d. And be it further resolved, that said bounty shall be paid in the manner and form following, that is to say; bonds of the County of Cass in the sum of one hundred and fifty dollars each, with interest coupons attached, and issued by the Treasurer of Cass County, and countersigned by the chairman of the Board of Supervisors, and registered and sealed by the County Clerk, with the seal of the Circuit Court of said county, and a record thereof kept by said clerk, showing the date of issue of the same, and the township to whose order the same is payable, which said bonds shall be payable in five years, and redeemable at any time within five years from the date thereof, at the pleasure of said County of Cass, and redeemable as hereinafter mentioned and provided, and which said bonds shall draw interest at the rate of six per cent. per annum, and payable annually. Said bonds shall be dated on the first or fifteenth day of the month following the actual time of issue.

3d. And be it further resolved, that the County Treasurer be and he is hereby authorized and instructed to deliver to each township, upon the presentation of an order signed by the township board, as many of said bonds as shall equal the number of men required to be furnished by the township, under the call of the President hereinbefore mentioned. Said bonds to be used by the several townships for the purpose of encouraging enlistments, in any way the townships, township boards, or township committees may direct.

4th. And be it further resolved, that in case any township shall fail to fill its quota in the manner and by the time contemplated by the foregoing resolutions, said township shall have the right to hold any remainder of county bounty bonds in its possession, until said bonds are called in for redemption, at which time said bonds shall be received by the County Treasurer in part payment of the county taxes charged to said township.

RESOLVED, That the Treasurer of Cass County be, and he is hereby directed, to fill the blank in the fourth and fifth lines of the bonds to be issued as an enlistment bounty by the County of Cass, so as to make them payable to the several townships or bearer.

On the 7th day of January, A. D. 1864, the Treasurer of the County of Cass delivered to the township of Porter twenty-eight bounty bonds, payable to said township or bearer, and on the same day twenty-two bounty bonds to the township of Calvin, payable to the township of Calvin or bearer. An entry of the facts, with the number of the bonds and their date, was made by the county clerk.

These bonds were payable in five years, or sooner, at the option of the county, and drew six per cent. interest.

The other towns received their share of the bonds that year. The interest on these bonds, down to 1867, was paid by the towns, each paying the interest on the bonds it took.

In 1866 the board directed each town to raise by tax the amount of the bonds taken by it, and interest to the 1st of February, 1867, that said bonds might be paid.

Eleven towns obeyed, and paid their bonds. Three did not — Calvin, Porter and Newberg — and the county paid the interest on their bonds out of its general fund.

In October, 1867, the board apportioned to each of these towns a sum, as a county tax, sufficient to pay its bonds, interest due February 1st, 1868, and back interest paid by the county. Newberg paid up. Calvin and Porter did not, and the county paid the interest on their bonds out of its general fund.

At its October session, in 1868, the board again apportioned to each of said towns of Porter and Calvin the sum required to pay the bonds taken by each, interest to February 1st, 1869, and back interest ; said sums being apportioned as a part of the county tax.

The supervisors of Porter and Calvin townships failed to levy the same.

On the 5th day of February, 1864, the Legislature passed an act for the purpose, among other things, of legalizing the acts of municipalities of this State in issuing bounty bonds, and providing for their payment by a tax, and in the case of counties, by a tax upon the property of the county, or upon the property of the townships loaning or using said bonds. — *Laws of 1864, p. 54.*

*D. Blackman,* for relators.

*H. H. Riley,* for respondents.

The People v. The Townships of Porter and Calvin.

CAMPBELL J.

These are applications for writs of *mandamus* to compel certain towns in Cass County to levy such sums as are required to pay principal and interest on certain county bonds alleged to have been lent to the towns upon the condition, afterwards sanctioned by the legislature, that the towns should have the amount apportioned to them as their share of county taxes. The claim made by the respondents, is that all these bonds were properly in fact, as well as in form, merely county obligations, and that the money to pay them should be apportioned upon the property of the entire county by its valuation, instead of being a town charge to the extent of bonds borrowed by or given to each town. The origin of the transaction was as follows :

In November, 1863, the Supervisors of Cass County passed resolutions, proposing to give a county premium or bounty on enlistments, of a bond of one hundred and fifty dollars per man, and appointed how the distribution should be made. In December, before any action had been had, they rescinded such of the resolutions as provided for direct action of the county authorities in paying the bounties, and in lieu thereof adopted another series of resolutions, providing that each town might, if it saw fit, receive a number of bonds, equal to its quota of men, and make its own distribution. These resolutions further declared that, although it should fail in raising its quota, each town should nevertheless retain the bonds and apply them on its proportion of county taxes, when redeemable.

In February, 1864, the action of the several local bodies incurring these obligations was legalized, and it was among other things enacted, that, "whenever the faith of any county has been pledged, and bonds issued and loaned by such county to any township, ward, supervisor district, or city therein, the amount of bonds so taken, with interest, as provided therein, shall be assessed upon the township,

18 MICH.—H.

ward, supervisor district, or city, taking the same, and shall be collected and paid at the same time and in the same manner as other county taxes are collected and paid." — *L. 1864, p. 54.*

It is claimed by the respondents, that these bonds were not lent to the towns, but that the town officers merely acted as county agents in disbursing the bounties offered on behalf of the county. In this connection much stress is laid upon the first resolution, which declares in so many words that it is expedient to offer a county bounty of one hundred and fifty dollars per man. The original plan provided for carrying out this general resolution was purely one for county purposes, and did not leave the control in the townships. And, had the original plan been carried out, there could have been no doubt on the subject. But the whole plan of distribution, on which the first resolution is silent, was changed. The bonds were only to be delivered to each township when demanded by its own board. They were to be used in such way as each town might direct for itself. If not used, they were nevertheless to be retained by the towns; and, instead of being returned for cancellation, were to be applied as cash upon their quota of county taxes.

Under these circumstances we can have no difficulty in holding that they were lent to the towns, and assessable upon them. The object of the statute is plain that the county should not be compelled to provide from its own means for payment, but that the towns should raise the money to pay them. A failure of the towns could not in law exempt the county from paying the holders; but, as between themselves, the town was the principal debtor, and the county only bound as surety.

This being so, it follows that any money paid by the county for principal, or upon the interest due upon that principal, was money paid to the use of the town. Where such a transaction is authorized, we can see no good reason why the same rule should not apply which entitles individ-

uals paying money to the use of others to recover interest on such payments.. It is in no sense compound interest, for the debt created in favor of the creditor is the sum which he paid to the debtors use, and it can make no difference whether this sum was a liability of one form or another. The creditor recovers back the money which he paid, with interest upon it, because, as to him, it is so much money lent to the one whose debt he has paid. And interest runs from the time of such payment.

These considerations will enable the parties to ascertain the proper amounts to be raised, by a simple calculation. It only remains to be considered whether we shall issue a a *mandamus* to compel action by the towns.

It was admitted on the hearing that there had been no bad faith in the neglect to raise the money, but that the difference of opinion had been honest, and that our decision would be submitted to without a writ. Technically the writ cannot issue precisely as prayed, inasmuch as the roll for 1868 has run out. The law, however, seems to contemplate that a special roll may be made for the collection of these taxes. But we have thought it best, under all the circumstances, not to require this unusual step to be taken, but to leave the matter to be provided for in the taxes of 1869. We shall, therefore, suspend action on the writ at present, without costs to either party, leaving the proceedings open, and not dismissing them.

The other Justices concurred.